FILED

2023 Oct-17  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **LAURA DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:23-cv-57-ACA** |
| | ) | |
| **UNITED OF OMAHA LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Laura Davis alleges that United of Omaha wrongfully concluded that she was no longer entitled to disability benefits.  Ms. Davis and United of Omaha each move for partial summary judgment as to the standard of review this court must use in evaluating United of Omaha's decision. (Docs. 17, 19). Because the Eleventh Circuit provides a six-part framework to analyze benefit-denial claims for plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA") and neither party has persuaded the court that it is proper to deviate from that framework in this case, the court **WILL DENY** both motions and employ the standards and legal framework required by controlling precedent.

## I.    BACKGROUND

Ms. Davis worked as a nurse for DCH Healthcare Authority. (Doc. 1 ¶¶ 26–28; *see also* doc. 18-1 at 114). DCH Healthcare Authority provided employees with

group welfare benefits that included a disabilities benefits plan. (*See* doc. 1 ¶¶ 14–15, 17–18; doc. 7 ¶¶ 14–15, 17–18; *see also* doc. 19-1). Ms. Davis submitted a claim for benefits under the plan and received monthly benefits for two years. (Doc. 1 ¶¶ 35–37; doc. 7 ¶¶ 35–37; *see also* doc. 18-1 at 114).

After the two-year period expired, United of Omaha conducted a transferable skills assessment, which considered whether Ms. Davis remained eligible for benefits under the plan. (Doc. 18-1 at 114). United of Omaha concluded that Ms. Davis was no longer eligible for benefits under the plan and notified her of that determination. (*Id*. at 114–15; *see also* doc. 1 ¶¶ 37; doc. 7 ¶¶ 37).

Ms. Davis appealed. (Doc. 18-1 at 115). United of Omaha referred her claim to a panel of board-certified physician consultants. (*Id*.). The panel included Dr. Sergey Neckrysh, who is board certified in neurological surgery. (*See id*. at 21). Dr. Neckrysh submitted to United of Omaha a report that supported the finding that Ms. Davis was no longer eligible for benefits under the plan. (*Id*. at 9).

Dr. Neckrysh's report discussed a "Functional Capacity Evaluation by Steve Allison, PT – 8/3/22." (Doc. 18-1 at 21 ¶ 19). The report further summarized the treatment Ms. Davis received from each of her medical providers on various dates of care. (*See*, *e.g.*, *id*. at 26–40). The summary of Ms. Davis's functional capacity evaluation appeared under the following title: "August 3, 2022 – Bledsoe Occupational Therapy, Steve Allison, PT – Functional Capacity Evaluation." (*Id*. at

36). The report also discusses attempts to contact a "David Bledsoe, Jr.," who is not a medical provider otherwise discussed in Dr. Neckrysh's report. (*Compare id*. at 37, *with* doc. 18-1 at 21 (listing Ms. Davis's medical providers)).

Ms. Davis responded to Dr. Neckrysh's report. (Doc. 18-1 at 12–16). Ms. Davis first observed that Dr. Neckrysh discussed an assessment conducted by a "Steve Allison, PT" when, in fact, David Bledsoe performed this evaluation. (*Id*. at 13) (quotation marks omitted). Ms. Davis sought confirmation that Dr. Neckrysh received the medical records and reports from Mr. Bledsoe. (*Id*. at 14). Ms. Davis also responded substantively to Dr. Neckrysh's assessment. (*See id*. at 12–13, 15).

The next day, United of Omaha sent Ms. Davis an amended report from Dr. Neckrysh to correct the misidentifications she identified. (Doc. 18-1 at 83–109; *compare id*. at 21, 36, 38, *with id*. at 87, 102, 104). Other than correcting this misidentification, the amended report and the original report are identical. (*Compare id*. at 21–43, *with* Doc. 18-1 at 87–109). United of Omaha did not give Ms. Davis an opportunity to respond to the amended report.  (*See id*. at 83). The next day, United of Omaha issued its final decision that Ms. Davis was no longer eligible for disability benefits under the plan. (*Id*. at 111–21).

Ms. Davis timely filed this complaint against United of Omaha. (Doc. 1). After the court entered a scheduling order (doc. 11), Ms. Davis moved to modify the court's scheduling order to first resolve the standard of review used in this case, (doc.

12). United of Omaha agreed "with the premise in [Ms. Davis's] motion that the first issue the [p]arties need[ed] the [c]ourt to decide is the applicable standard of review" yet disagreed with Ms. Davis's proposed process. (Doc. 13 at 1).

The court granted in part Ms. Davis's motion to amend the court's scheduling order and bifurcated this case as suggested by United of Omaha. (Doc. 14). The first—and current—phase of this case considers the appropriate level of deference, if any, the court should give to United of Omaha's determination. (*Id*. at 2). The second phase will address the merits of Ms. Davis's complaint. (*Id*.).

## II.    DISCUSSION

Ms. Davis asserts a claim against United of Omaha "to secure disability benefits due to" her under the plan. (*See* doc. 1 ¶ 1). "ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010). The Supreme Court "established three distinct standards for reviewing an ERISA plan administrator's decision: (1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Id*. (footnote omitted).

The Eleventh Circuit incorporates these three standards of review into a six-step framework. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir.

2011). "At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1326 (11th Cir. 2020) (quotation marks omitted). Under this framework, a district court evaluating a denial of benefits under ERISA should:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355. Although the Eleventh Circuit has not held that a district court errs when applying these steps out of order, *e.g.*, *Doyle v. Liberty Life*

*Assur. Co. of Bos.*, 542 F.3d 1352, 1357–58 (11th Cir. 2008), controlling precedent strongly suggests that district courts should apply this framework sequentially, *e.g.*, *Hill*, 971 F.3d at 1326 (describing the six-step framework as a "progressi[ve]" analysis) (quotation marks omitted).

Ms. Davis contends that the court should review United of Omaha's decision using only a *de novo* standard. (Doc. 18 at 9–10). United of Omaha contends that the court should employ only an arbitrary and capricious standard. (Doc. 19 at 2). The court considers first the arguments by Ms. Davis.

1. Ms. Davis's Motion

Ms. Davis asserts that United of Omaha "forfeited as a matter of law" its "entitle[ment] to a deferential review standard" because it did not provide her "an opportunity to respond to new evidence or grounds for decision before issuing an appeal determination." (Doc. 18 at 2–3). She relies on two ERISA claims-procedure regulations for this assertion.

Section 2560.5030-1(h) obligates plan administrators to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination . . . , and under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1). As part of the full and fair review process, a plan administrator must "provide the claimant . . . with any new or additional evidence considered,

6

relied upon, or generated by the plan, insurer, or other person making the benefit determination . . . in connection with the claim . . . sufficiently in advance of . . . the notice of adverse benefit determination." *Id*. at (h)(4)(i).

Section 2560.5030-1(*l*) requires plan administrators to "strictly adhere to all the [claims procedure] requirements." *Id*. at (*l*)(2)(i). If the plan fails to do so, "the claimant is deemed to have exhausted the administrative remedies available under the plan" and "is entitled to pursue" judicial review "on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(*l*)(2)(i). On judicial review, "the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." *Id*.

Notwithstanding the strict adherence requirement, the regulations contain an exception for *de minimis* violations of ERISA-claims procedure regulations. *Id*. at (*l*)(2)(ii). *De minimis* violations of claims procedure regulations are those that do not "prejudice or harm" the claimant if the plan administrator "demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant." *Id*.

So, that is the needle Ms. Davis seeks to thread: (1) that United of Omaha violated the full and fair review regulatory requirement and (2) that this violation

was not a *de minimis* one. (*See* doc. 18 at 2–3). United of Omaha contends the amended report "does not provide any new or additional evidence considered and does not offer any new rationale for denying [Ms. Davis's] claim" because it corrected only the name of a single provider. (Doc. 19 at 8–9). According to United of Omaha, it did not violate the full and fair review regulatory requirement. (*Id*.).

The court does not (and need not) find that United of Omaha violated ERISA's claim procedure regulations by failing to provide Ms. Davis an opportunity to respond to the amended report. The court finds instead that even if United of Omaha violated ERISA's regulations, the violation was *de minimus*. *See* 29 C.F.R. § 2560.503-1(*l*)(2)(ii).

First, Ms. Davis has not established that she suffered or is likely to suffer any prejudice or harm by not receiving an opportunity to respond Dr. Neckrysh's amended report. *See id*. Dr. Neckrysh amended his report because Ms. Davis identified a typo in the original report. (*See* doc. 18-1 at 13–14). Although Ms. Davis expressed confusion regarding the reference to "Steve Allison, PT" rather than Mr. Bledsoe in the original report (*see id*. at 15), the original report summarized the providers' findings based on date; described specific medical care Ms. Davis received; and for the particular provider Ms. Davis identified, stated that the evaluation occurred at "Bledsoe Occupational Therapy" (*id*. at 36). The presence of this identifying information mitigates concerns that Ms. Davis was unable to fully

respond to Dr. Neckrysh's assessment. Further, Ms. Davis did respond substantively to Dr. Neckrysh's original report. (*See id*. at 12–13, 15).

Second, United of Omaha has shown that the alleged claims procedure violation was for good cause and part of the ongoing, good faith exchange of information with Ms. Davis. *See* 29 C.F.R. § 2560.503-1(*l*)(2)(ii). Again, Dr. Neckrysh amended his report because Ms. Davis identified a typo in the original report. (*See* doc. 18-1 at 13–14). In all other respects, the original report and amended report are identical (*compare id*. at 21–43, *with id*. at 87–109), and Ms. Davis had already responded to the original report (*see id*. at 12–13, 15). The court is satisfied that the alleged violation of ERISA's claim-procedure regulations was for good cause and because of the ongoing, good faith exchange of information. *See* 29 C.F.R. § 2560.503-1(*l*)(2)(ii). Accordingly, even if United of Omaha violated ERISA's claim procedure regulations, the court will not apply solely the *de novo* standard to review United of Omaha's decision.

Ms. Davis asserts that the *de novo* review standard is "well supported" and aligns "with an increasing number of courts, including most importantly within the Eleventh Circuit." (Doc. 18 at 14). But the Eleventh Circuit has held that the violation of ERISA's claims-procedure regulations does not *per se* trigger *de novo* review. *See White v. Coca-Cola Co.*, 542 F.3d 848, 855–56 (11th Cir. 2008). The

Eleventh Circuit instead applies a six-step framework in "virtually *all* ERISA-plan benefit denials." *Id*. at 853 (quotation marks omitted; emphasis in original).

Ms. Davis has not established that this court can depart from this framework in a way that is consistent with controlling precedent. Accordingly, her motion is **DENIED**.

2. The Motion By United of Omaha

United of Omaha asserts that the arbitrary and capricious standard of review applies because the Plan grants United of Omaha discretionary authority to determine eligibility. (Doc. 19 at 4–5). In essence, United of Omaha requests that the court bypass the first step of the Eleventh Circuit's six-step framework and proceed directly to the second step. (*See id*.); *see also Blankenship*, 644 F.3d at 1355 (summarizing the six-step framework). But the Eleventh Circuit applies the six-step framework in "virtually *all* ERISA-plan benefit denials." *White*, 542 F.3d at 853 (quotation marks omitted; emphasis in original); *see also Hill*, 971 F.3d at 1326 (describing the "progression" of this analysis) (quotation marks omitted).

United of Omaha also has not established that this court may depart from the six-step framework in a way that is consistent with controlling precedent. Accordingly, the motion is **DENIED**.

3. <u>The Scope of Discovery</u>

When the court bifurcated this case, the court advised the parties that the court "w[ould] address the permissible limits of discovery" as part of its ruling. (Doc. 14 at 2). Ms. Davis now asserts that the question of discovery is premature and "requests the opportunity submit briefing specific to that issue." (Doc. 21 at 7).

The court disagrees that issues regarding the scope of discovery are premature. The court already advised the parties that the court would address the limits of discovery in its ruling. (Doc. 14 at 2). The court does not ordinarily consider motions that are buried in parties' briefs. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009). To the extent Ms. Davis has buried a motion for further briefing on the scope of discovery in her response brief, that request is **DENIED,** and the court **ORDERS** as follows:

The Eleventh Circuit's six-step framework requires this court to first apply the *de novo* standard to determine whether United of Omaha's benefits-denial decision is wrong. *Blankenship*, 644 F.3d at 1355. At that step, "the scope of discovery [i]s not limited to the administrative record compiled by [United of Omaha] insofar as additional discovery could shed light on how [United of Omaha] reached its decision[] or in examining whether [United of Omaha] fulfilled its fiduciary duties." *Capone*, 592 F.3d at 1196 (cleaned up).

Based on this controlling precedent and the parties' briefing, the parties are permitted to conduct limited discovery regarding the extent to which United of Omaha's consultant panel received the analysis and evaluation conducted by Mr. Bledsoe. (*See generally*, *e.g.*, doc. 18-1 at 14–15). If any party requires discovery outside the scope of this order, that party may make an appropriate motion on or before **November 28, 2023.**

At step one of the merits phase of this case, the court will permit the parties to present "evidence beyond that which was presented to [United of Omaha] at the time the denial decision was made." *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1284 n.6 (11th Cir. 2003). If the case proceeds to step three, the court will limit review to the administrative record. *Cf. Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1296 (11th Cir. 2022).

The court's independent review of the docket reveals that deadlines in this case have passed as the parties awaited the court's ruling. (*See* doc. 11). Accordingly, the parties are **DIRECTED** to meet and confer and submit a jointly proposed scheduling order on or before **October 31, 2023.**

## III.   CONCLUSION

The court **WILL DENY** the motion by Ms. Davis. (Doc. 17). The court **WILL DENY** the motion by United of Omaha. (Doc. 19). The parties are

**DIRECTED** to meet and confer and submit a jointly proposed scheduling order on or before **October 31, 2023.**

      **DONE** and **ORDERED** this October 17, 2023.

 

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE